CORTINAS, Judge.
The defendant, Franklin W. Bain, appeals his convictions and sentences on counts one and two, which charged defendant with aggravated assault with a deadly weapon by threatening to kill Kent Rome *491 ro and Peter Tansey on July 9, 1999. We affirm, in part, and reverse, in part.
During the trial in this case, the State presented the following testimony. In May 1999, the defendant was arrested for petit larceny and for driving while his license was suspended. The defendant entered into a bail bond agreement with Hugo Bail Bonds. Bondsperson Mabel Gonzalez testified that she bonded the defendant out of jail and that he executed a disclosure notice that provided, “Surety Company, as bail, shall have control and jurisdiction over the principal during the term for which the bond is executed and shall have the right to apprehend, arrest and surrender the principal to the proper officials at any time as provided by law.”
When the defendant failed to appear in court, the bail bond company sent bondsmen to arrest him. On July 9, 1999, Kent Romero and Peter Tansey, wearing identification on their vests and a badge on a chain around their necks, approached the defendant’s house. Romero went to the front door of the home and Tansey went to the rear door. Romero knocked and announced multiple times that they were “surety agents, bail agents.” Romero spoke to the defendant through a window and explained that he had failed to appear in court and that they needed to speak with him. The defendant told Romero that it was late and that they should leave and come back in the morning. Romero then heard the bolt of a rifle being pulled back and saw the silhouette of a rifle through the window. The front and back doors opened, and Rottweiler dogs ran out the doors attacking the bondsmen. The defendant then locked himself back in the house. After calling the police and being told they could not assist, Romero and Tansey tried to break down the front door, but the defendant left through the rear door and evaded them. Sometime thereafter, the police arrested the defendant.
On appeal, the defendant argues that the trial court erred in giving a special jury instruction regarding a bail bondsman’s authority to arrest the defendant and forcibly enter the defendant’s dwelling. The defendant claims that the special instruction removed the question of the reasonableness of the bondsmen’s actions from the jury’s province and effectively nullified the instruction on self-defense violating his right to a fair trial. We disagree.
During the charge conference, the defense counsel “objected” to the instruction as follows:
I object because I want to make sure we preserve our right. It is our hope that we can ask for a change in the law in that aspect so I think we have at least an ethical basis upon which to object. We object that it should not be the law.
The State argues that defense counsel stated that the instruction was the law but that he only wanted to preserve his right to ask for a change in said law.
The trial court then gave the following instruction to the jury:
A defendant who has been released from jail on bond is considered to be in the custody of the surety agent or bail bondsperson who posted the bond for the defendant.
A surety agent or bail bondsperson may arrest a defendant at any time before the conclusion of the defendant’s case and is permitted to forcibly enter the defendant’s dwelling or home to make the arrest.
The jurors were also instructed with the standard instruction on justifiable use of deadly force when attacked in one’s own home as modified by the defense.
*492 We find that the defense objection was not sufficiently precise so as to inform the trial judge of the basis and grounds of the objection. § 924.05(1)(b), Fla. Stat. (1999). Thus, the claim was not properly preserved for appeal, and this court will only review the issue for fundamental error. Archer v. State, 673 So.2d 17, 20 (Fla.), cert. denied, 519 U.S. 876, 117 S.Ct. 197, 136 L.Ed.2d 134 (1996).
Although the instruction may have been more complete by instructing the jury that a bail bondsman could only use “reasonable force,” giving this instruction was not fundamental error. See Johnekins v. State, 823 So.2d 253 (Fla. 3d DCA 2002), review denied, 845 So.2d 890 (Fla.2003). Review of the record indicates that no reasonable juror could have believed that the defendant was being burglarized or robbed on July 9, 1999. Nor was any force used by the surety agents on July 9, 1999. On the contrary, from the inception, the bail bondsmen identified themselves and their purpose for being there. Moreover, the instruction given did not preclude the jury from finding that the defendant acted in self-defense if that is what they believe.
Upon his conviction on counts one and two, the trial court sentenced the defendant to ten years imprisonment on count one with a three-year minimum mandatory, followed by a five-year term of imprisonment on count two with a three-year minimum mandatory. The written sentencing order indicated a three-year minimum mandatory term on count one only.
As part of this appeal, the defendant filed a motion to correct his sentence alleging that the habitual offender sentences on the aggravated assault counts must be imposed concurrently. At oral argument, the State conceded this point and agreed that counts one and two must run concurrently. We agree and remand for re-sentencing with the instruction that these counts must run concurrently. The defendant need not be present for re-sentencing.
The defendant also filed a second motion to correct his sentence on the ground that the trial court erred by using a 1998 case as a qualifying prior conviction for habitual offender purposes. This issue has no merit based on this court’s holding in Turner v. State, No. 3D04-2510, 891 So.2d 1215 (Fla. 3d DCA Feb. 2, 2005)(adopting the reasoning of McCall v. State, 862 So.2d 807 (Fla. 2d DCA 2003)). These cases held that the sanction of probation may count towards the calculation of the sentence under the habitual felony offender statute, section 775.084, Florida Statutes. We certify direct conflict with Richardson v. State, 884 So.2d 950 (Fla. 4th DCA 2003).
Finally, the appellant filed a pro se brief alleging that the State witnesses committed perjury, that the trial court ordered the jury to find the defendant guilty of using a firearm, and that the trial court did not know that it was sentencing the defendant to two counts of aggravated assault with a firearm. As the State witnesses were subject to rigorous cross-examination and the jury was instructed on weighing the evidence and considering the reliability of the witnesses’ testimony, the defendant’s claim has no merit. Nor was there any evidence that the trial court ordered the jury to find the defendant guilty of using a firearm or that the trial court did not know that it was sentencing the defendant to two counts of aggravated assault with a firearm.
Affirmed, in part; reversed, in part; direct conflict certified.